IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TED LEWIS,

        Plaintiff,                    No. CIV S-07-0090 RRB DAD P

   vs.

DR. B. NAKU, et al.,

        Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. Before the court is defendants' July 2, 2007 motion to dismiss the case on the ground that plaintiff failed to exhaust available administrative remedies on his claims prior to bringing this action. Plaintiff has filed a timely opposition and defendants have filed a timely reply.

**BACKGROUND**

        Plaintiff alleges that, on December 29, 2005, he experienced back and knee injuries while working as a welder in Solano State Prison's metal fabrication shop. (Compl. at 5.) Plaintiff further alleges that, after waiting in the primary care clinic for hours, a nurse informed him that all of the doctors had gone home and that he would be called back the next day or in the near future to see a doctor. (Compl. at 5a.) Plaintiff contends that 79 days passed and

he had not seen a doctor or been told he could to return to the clinic.  (Id.)  Plaintiff further contends he had no choice but to file an administrative grievance.  (Id.)  Plaintiff alleges that, as he pursued the grievance through the appeals process, he was examined by defendant Naku.  (Id.)  Plaintiff further alleges that both defendants Naku and Traquina participated in reviewing his administrative grievances and denying and delaying his medical care.  (Id. at 5f.)  Plaintiff alleges that defendants' actions violated his Eighth Amendment rights.  (Compl. at 5.)  He seeks $250,000 in damages.  (Id.)

**DEFENDANTS' MOTION TO DISMISS**

I. Defendants' Motion

        Defendants argue that plaintiff's action should be dismissed because he brought suit prior to exhausting his administrative remedies.  (Defs.' Mot. to Dismiss at 4.)  Defendants contend that plaintiff has pursued four administrative appeals since the date of the alleged injury.  (Id. at 6-7; Cervantes Decl. at 2.)  However, only two of plaintiff's appeals were accepted at the director's level of review.  (Defs.' Mot. to Dismiss at 7; Grannis Decl. at 2.)

        Defendants argue that plaintiff's grievance SOL-06-00882 was received by prison officials on or about March 21, 2006.  (Defs.' Mot. to Dismiss at 7.)  The gravamen of that grievance was that plaintiff was not called back to the primary care clinic and therefore was not receiving medical treatment after his work injury on December 29, 2005.  (Id.)  Defendants emphasize that this appeal did not grieve the alleged conduct and/or treatment by Drs. Naku or Traquina.  (Id.)  Rather, Dr. Naku was the reviewer of this administrative grievance at the first formal level of review.  (Id.)  In his decision, Dr. Naku found several attempts had been made to interview and evaluate plaintiff, but plaintiff failed to either report or respond to those attempts.  (Id.)  In addition, Dr. Naku noted that when he evaluated plaintiff on April 18, 2006, for a different complaint about needing batteries for his hearing aide, plaintiff made no mention of his back or knee injuries.  (Id.)  Similarly, Dr. Traquina was the reviewer of this administrative grievance at the second level of review.  (Id. at 8.)  In his decision partially granting the appeal,

Dr. Traquina found that plaintiff had been seen on May 15, 2006 by Dr. Naku for his low-back pain and, based on the physical exam, plaintiff appeared to be in no distress, and his lumbar spine appeared unremarkable, except for a point of tenderness for which Dr. Naku ordered blood tests and prescribed Motrin and Robaxin. (Id.) Ultimately, plaintiff appealed this grievance to the director's level of review, and the appeal was denied on September 5, 2006. (Id.)

Defendants represent that plaintiff's grievance CSP-S-06-00979 was received by prison officials on or about March 29, 2006. (Defs.' Mot. to Dismiss at 8.) The gravamen of this grievance was plaintiff's claim that he submitted a sick-call slip at the end of January for upper respiratory infection with a bad cough, temperature, and ear pain with fluid in his ear but had not been seen by medical staff and was receiving no treatment. (Id.) Defendants once again emphasize that this appeal did not mention and did not grieve the alleged conduct and/or treatment of plaintiff by Drs. Naku and Traquina relating to his back or knee conditions. (Id.) Again, Dr. Naku was the reviewer at the first formal level of review. In his decision, Dr. Naku found that plaintiff's earache and respiratory problem had resolved and that plaintiff was now complaining instead about back pain. (Id.) Dr. Naku found that plaintiff's back pain was secondary to osteoarthritis and prescribed Analgesics and recommended that he be re-evaluated in one month. (Id.) Laura Mefford for Dr. Traquina was the reviewer of this grievance at the second level of review. She granted the appeal in that plaintiff had been seen and evaluated several times for his medical complaints. (Id.) Ultimately, plaintiff appealed to the director's level of review, and the appeal was denied on September 26, 2006.

Defendants note that plaintiff submitted two other grievances but that both were related to rescheduling his interferon injections and getting copies of his medical records. (Defs.' Mot. to Dismiss at 8-9.) Defendants emphasize that these appeals did not grieve the alleged conduct and/or treatment by Drs. Naku and Traquina of plaintiff's back and knee conditions and were not accepted at the director's level of review. (Id. at 7-9; Grannis Decl. at 2.)

/////

1  Defendants contend that plaintiff's allegations against defendants Naku and
2  Traquina did not occur until after plaintiff filed his initial grievances regarding treatment
3  received for his knee and back injuries . (Defs.' Mot. to Dismiss at 9.)  Accordingly, defendants
4  conclude plaintiff's claims against Drs. Naku and Traquina must be dismissed because he failed
5  to exhaust administrative remedies before filing suit. (Id.)

6  II. Plaintiff's Opposition

7  In opposition, plaintiff argues that it would be a never-ending cycle of appeals if
8  he had to appeal every person's actions in this case. (Pl.'s Opp'n to Def's. Mot. to Dismiss at 2.)
9  Plaintiff contends that he pursued his administrative grievances through the director's level prior
10 to filing this suit.  Specifically, he notes that his grievance SOL-06-00882 pre-dates the civil
11 complaint and was fully adjudicated from the informal level through the director's level. (Id. at
12 3, Ex. A.)  Plaintiff further notes that he was very specific in his complaint against the defendants
13 in his second level appeal of grievance SOL-06-00882 in which he expressly named Dr. Naku.
14 Plaintiff concludes that he has exhausted his claims through the administrative grievance process.
15 Therefore, he contends, defendants' motion to dismiss should be denied.

16 III. Defendants' Reply

17 In reply, defendants reiterate that plaintiff did not grieve the alleged conduct
18 and/or treatment by Drs. Naku and Traquina in his initial grievances. (Defs.' Reply at 2.)  More
19 specifically, defendants argue that plaintiff initiated grievance SOL-06-00882 long before Dr.
20 Naku or Dr. Traquina were ever involved in plaintiff's medical care. (Id.)  Defendants contend
21 that plaintiff admits that it was not until he appealed at the second and third levels of review that
22 he included specific allegations and references regarding defendants Drs. Naku and Traquina.
23 (Id.)  Defendants conclude that plaintiff's claim for inadequate medical care presented in his
24 complaint in this action arose after he filed his initial administrative grievance, and therefore the
25 court should grant their motion to dismiss. (Id. at 5.)
26 /////

IV. <u>Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)</u>

By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

The Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). The Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. <u>Id.</u> at 741 n.6. Because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. <u>Woodford v. Ngo</u>, __ U.S. __, 126 S. Ct. 2378, 2382 (2006).

In California, prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most appeals progress from an informal review through three formal levels of review. <u>See</u> Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal level, also referred to as the director's level, is not appealable and will conclude a prisoner's administrative remedy. Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available before filing suit. <u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005); <u>Bennett v. King</u>, 293 F.3d 1096, 1098 (9th Cir. 2002).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion. <u>Jones v.

Bock, __U.S.__, __, 127 S. Ct. 910, 921 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003). The defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust–a procedure closely analogous to summary judgment–then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record."[1] Id. at 1120 n.14. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120. See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied ___U.S.___, 127 S. Ct. 1212 (2007). On the other hand, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 127 S. Ct. at 924.

V. Discussion

Plaintiff filed four grievances with prison officials regarding his medical care since December 29, 2005, the date of his alleged back and knee injuries. (Cervantes Decl. at 7.) Plaintiff pursued two of those appeals through the director's level before filing this lawsuit. (Grannis Decl. at 2-3.) Accordingly, defendants' motion to dismiss hinges on whether one or both of plaintiff's appeals were sufficient to exhaust his administrative remedies with respect to the claims presented in this action.

The court finds that plaintiff exhausted his Eighth Amendment inadequate medical care claims prior to filing this lawsuit. Plaintiff's first grievance (SOL-06-00882) included sufficient detail to put prison officials on notice of plaintiff's claim for inadequate

---

[1] Plaintiff was notified of the requirements for opposing a motion to dismiss brought pursuant to non-enumerated Rule 12(b) on April 24, 2007. (Order filed Apr. 24, 2007 at 3-4).

medical care with respect to his back and knee injuries. In that grievance, plaintiff described how he received a back and knee injury at work and was sent to the primary care clinic to be seen by a doctor. (Cervantes Decl., Ex. B at 7.) After waiting several hours, he was told that the doctors had gone home and he would be called back in the near future. (Id.) Plaintiff explained in the grievance that three months had passed since his alleged injury and that he had not received a call-back to see a doctor and was experiencing back and knee pain on a daily basis. (Id.) He further explained that his workman's compensation claim had been denied because his case file was lacking medical records. (Id.) Plaintiff noted that he believed his constitutional rights were being violated and asked to see a doctor as soon as possible and to be compensated. (Id.) At the second level of review, plaintiff complained that since filing his first grievance he had been seem by Dr. Naku but all the doctor would talk about was plaintiff's ear and not his back condition that continued to be painful and had never been treated. (Id.) Plaintiff pursued this grievance all the way through the director's level where it was denied on September 5, 2006, more than four months before he filed this action.

In addition, although plaintiff's second grievance (CSP-S-06-00979 ) began as a complaint about a respiratory infection and an earache, as the grievance proceeded plaintiff informed prison officials that his primary concern was the lack of medical treatment for his back injury. (Id., Ex. E.) Prison officials even acknowledged their awareness of this aspect of plaintiff's medical care complaint in their decisions at the first and second levels of review. (Id., Ex. F & G.) Plaintiff also pursued this appeal through the director's level where it was denied on September 26, 2006, more than three months before he filed this action.

Throughout their briefing, defendants repeat that plaintiff filed his initial grievances before he even saw the defendant physicians. They argue that plaintiff failed to exhaust his administrative remedies because he did not grieve the alleged conduct or treatment by defendants in his initial grievances at the first level. Defendants insist that "[t]here was simply no notice given to the defendants." (Defs.' Reply at 4.) The arguments are unpersuasive. It is

1  the nature of plaintiff's claim, not when plaintiff saw a particular doctor or specifically named a
2  defendant in his grievances, that is the paramount consideration in the exhaustion analysis.
3  Throughout his administrative grievances, plaintiff has continuously maintained that he has
4  received inadequate medical care for the injury he sustained on December 29, 2005.  Plaintiff
5  presents the very same claim in his complaint before this court.
6         The U.S. Supreme Court has clearly indicated that "exhaustion is not per se
7  inadequate simply because an individual later sued was not named in the grievances."  See Jones,
8  127 S. Ct. at 923.[2]  The Supreme Court reasoned that promoting early notice to prison officials
9  who prisoners may later sue is not the purpose of the exhaustion requirement.  Jones, 127 S. Ct.
10 at 923 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the
11 primary purpose of a grievance is to alert prison officials to a problem, not to provide personal
12 notice to a particular official that he may be sued; the grievance process is not a summons and
13 /////
14 /////
15 /////
16 /////
17 /////
18 /////

---

[2] In Jones, two prisoners filed suits that were subsequently dismissed because they had not identified each defendant in their administrative grievances. 127 S. Ct. at 922. Rejecting the "name-all-defendants" rule, the Court held that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Id. at 923. The Court explained that nothing in the PLRA requires that the plaintiff name all of the defendants during the grievance process. Id. at 922. The Court noted that the PLRA only requires exhaustion of "such remedies as are available." Id. at 922 (quoting 42 U.S.C. § 1997(e)). In addition, the Court explained that "Nothing in the MDOC [Michigan Department of Corrections] policy itself supports the conclusion that the grievance process was improperly invoked simply because an individual later named as a defendant was not named at the first step of the grievance process." Id. at 922. The Court observed that, at the time the prisoners had filed their grievances, the Michigan Department of Corrections policy only told prisoners to "be as specific as possible." Id. at 922.

complaint that initiates adversarial litigation.")).[3] Rather, the Court observed, the purpose underlying the exhaustion requirement is to allow prison officials to address complaints about the programs they administer before being subject to suit, thereby reducing litigation to the extent complaints are satisfactorily resolved. See Jones, 127 S. Ct. at 923. In this case, prison officials would not have been anymore aware of the problem about which plaintiff was complaining had he re-started the grievance process each time he saw one of the defendants and continued to receive allegedly inadequate medical care for his back and knee injuries.

In this regard, repeated exhaustion of the same grievance is unnecessary to satisfy the PLRA exhaustion requirement. Prisoners are not required to file and exhaust a separate grievance each time they allegedly receive inadequate medical care for an ongoing condition. See Gomez v. Winslow, 177 F. Supp. 2d 977, 982 (N.D. Cal. 2001)[4]; Sulton v. Wright, 265 F.

---

[3] In addressing the issue of what an administrative grievance must contain in order to satisfy the PLRA's exhaustion requirement the Seventh Circuit has held that:

> [a] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming. [The plaintiff's] two grievances were comprehensible and contained everything that Illinois instructed him to include. Defendants can't complain that he failed to do more.

Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). See also Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001) ("As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.").

[4] In Gomez, the plaintiff claimed that defendants had been deliberately indifferent to his medical care needs in violation of the Eighth Amendment. Gomez v. Winslow, 177 F. Supp. 2d 977, 978 (N.D. Cal. 2001). In his initial grievance, Gomez wrote "Inadequate medical attention to a serious medical need." Id. at 979. Gomez further explained that he had been diagnosed with hepatitis C and had not yet received treatment even though he had sent numerous medical requests to staff. Id. at 979. The defendants moved for judgment on the pleadings, arguing that Gomez failed to comply with the PLRA exhaustion requirement because he did not exhaust his three distinct claims that defendants failed to timely diagnose his hepatitis, failed to timely treat his illness, and failed to provide him with adequate information about treatment. Id. at 981-82. Rejecting defendants' argument, the court held that Gomez's claim had been exhausted. Id. at 982. The court explained that "[r]ather than distinct causes of action, allegations that defendants

Supp. 2d 292, 298 (S.D.N.Y. 2003) (denying motion to dismiss for failure to exhaust based upon arguments similar to those advanced by defendant here), abrogated on other grounds by Richardson v. Goord, 347 F.3d 431 (2d Cir. 2003); Gomez, 177 F. Supp. 2d at 982 (refusing to break down a complaint of inadequate treatment into distinct claims of failures); Torrence v. Pelkey, 164 F. Supp. 2d 264, 278-79 (D. Conn.2001) (declining to require exhaustion of new issues in medical care that arose from the "same series of events" concerning medical care that had already been exhausted).  Thus, it has been observed that  "[r]igid 'issue exhaustion' appears inappropriate when the fundamental issue is one of medical care from the same injury." Sulton, 265 F. Supp. 2d at 298.

    Finally, neither the PLRA nor CDCR procedures require that plaintiff re-start the grievance process each time he encountered one of the defendants.  As noted above, California state prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  The language of the regulation is included in the first sentence on the standard inmate appeal form:  "You may appeal any policy, action or decision which has a significant adverse affect [sic] upon you."  The form merely instructs the inmate to "Describe Problem" and state the "Action Requested."  Nowhere does the form tell prisoners when a grievance is premature or when a grievance must be repeated.  Nowhere does the form instruct prisoners as to who must be named in the grievance.  If the prisoner proceeds to the second level after receiving a response at the first level, he is required only to explain why he is dissatisfied with the response he received.  At the third level, he is required only to "add data or reasons for requesting a Director's Level

---

failed to notify Gomez that he tested positive for hepatitits C antibodies, begin treatment for a matter of years, or provide him with adequate information are simply aspects of the inadequate medical treatment he notified corrections officials about in his administrative appeals." Id.  The court emphasized that the purpose of exhaustion is to provide prison officials with notice of problems in the prison, so they can take appropriate action. Id.  The court concluded that Gomez had made it sufficiently clear to prison officials through his grievances that he was concerned about inadequate medical treatment for his heptatitis. Id.

Review." The PLRA and the CDCR procedures make no mention of repeat exhaustion for an ongoing medical care claim. See Jones, 127 S. Ct. at 923 (where prison grievance regulations make no mention of naming particular officials, imposing such a prerequisite to proper exhaustion is unwarranted); Lewis v. Mitchell, 416 F. Supp. 2d 935, 941-42 (S.D. Cal. 2005) (holding that the CDC 602 appeal form does not require a prisoner to name or identify specific prison officials).

Under the circumstances above, the court finds that plaintiff's allegations against the defendants are encompassed in his administrative grievances, which he properly exhausted prior to filing suit. As noted above, defendants have the burden to raise and prove the affirmative defense of failure to exhaust administrative remedies. See Jones, 127 S. Ct. at 921; Wyatt, 315 F.3d at 1117-19 & nn.9 & 13. Defendants Naku and Traquina have not carried their burden in this case. Therefore, the defendants' motion to dismiss should be denied.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that the motion to dismiss filed by defendants Naku and Traquina on July 2, 2007 be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

/////

/////

/////

/////

/////

1  that failure to file objections within the specified time may waive the right to appeal the District
2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: October 17, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
lewi0090.57